Chaplaincy of Full Gospel Churches, et al., Associated Gospel Churches, Abellant, versus United States Navy, et al., Mr. Schultz for the Abellant, Missoni for the Appalachian U.S. Navy, et al. Good morning, counsel. Mr. Schultz, please proceed when you're ready. Thank you, Your Honor. I may please the court. I'm Arthur Schultz. I represent 54 chaplain appellants and the Associated Gospel Churches. I reserve two minutes for rebuttal. The appellees hereafter of the Navy has greatly simplified this case by failing to respond to two of the major issues that the chaplains raised. The precedent is very clear that if when a party fails to respond to a major issue, that is waived. And I can provide specific citations, if the court is interested, that shows that that applies to both appellants and appellees. I want to emphasize that the boards that we're talking about were composed mostly of chaplains, with the exception of one line officer. That procedure changed in fiscal year 2003 after we filed suit, challenging the stacking of boards by denominations unfavorable or hostile historically to my clients, and the practice of always having a Catholic chaplain on every board for 54 years with the power to essentially destroy the career of any chaplain for any reason at all. The first conceded issue is the fusion of civic and denominational responsibilities on power that results from the commissioning of clergy as naval officers. Larkin versus Grendel then pointed out that the core purpose of the establishment clause is to prevent the fusion of government and religious power. The Navy and the other services address that issue by restricting chaplains to only religious issues, only to ministry. They cannot perform the duty of any other officer. And the question has been asked, but not answered. Why then, if they restrict chaplains from the duties performed by every other officer, do they allow a chaplain to destroy the career of any other chaplain anonymously and without accountability? What is the record evidence on the destruction of careers? You've pointed out, for another point you were making, you noted that somebody who had been passed over in the Navy was hired by the Army. Yes, sir. Four of them, to be exact, Your Honor. What is there about destruction of careers in the record? Your Honor, those chaplains, chaplains of gospel churches, their Navy career was terminated. They were hired by the Army, but they have to start all over again. So they start out considerably behind their other peers. And plus the fact that that's a violation. I call the court's attention to 1642, the Joint Appendix, which is the machine. I'm holding it up here so there's no doubt you can see this. If you press the zero button, the undisputed testimony is, that destroys the chaplain's career. No record is kept of who does that. And it's the equivalent, Your Honor, if you're on a panel, one of your judges can say, well, I'm going to press this button and I decide the case. It overrules the opinion of all the other people on the panel. The panelists there are made up, supposedly, of other officers. And so what happens is, essentially, no record is kept of this. This is the unbridled power. It's demonstrated. And Chaplain Black, who was then the chief of chaplains in an investigation of that exact happening, described in detail this process called zeroing out. You press the zero button and that person's career is over. And the particular complainant in that case, Mary Washburn, complained and she was zeroed out because she, the female Navy chaplain, disagreed with Washburn's view of ministry. Now, that's a theological issue. And the requirement under fusion, under the Establishment Clause, is that when you grant discretionary civic power to a person defined by their religious identity, there must be effective guarantees. Let me say it again. Effective guarantees that the power delegated will be used for secular, neutral, and non-ideological purposes. And the record shows that is not the case. This process, again, which I'm holding up, you press the zero, that can happen. You can do that because you don't like him, because somebody checked you out. And that's shown in the case of the 97-98 boards. The other thing that the Navy has not disputed, again, is the testimony of Rear Admiral Black, Washburn, or any other, Rear Admiral Holderby, when he admitted to the Naval Inspector General investigating 97-98 boards, on which some of our clients, my clients, were participating, he testified that he, as the chief of chaplains, would influence other people because of his rank and the fact that he's the chief. He controls the careers of everybody on that board, with the exception of the line officer. Mr. Schultz, what did you have to say about Washburn? Washburn was a female, and she was a conservative, if I can use that term, in terms of her theology. She had a conservative view of women in ministry. But her complaint, as I understood it in the affidavit, was just that. Pardon me. I think she referred to one of the members of the board as a feminazi, and herself as a conservative, right? That's correct. I'm not sure of the relevance of that, but tell me this. What about the Black affidavit? That was just hearsay, right? No, sir. I thought she said that she heard about somebody who had heard from somebody else. Sir, the Black, Your Honor, the Black affidavit, he's testifying to what happened on the board. He said he became aware that somebody was zeroing out Washburn because of the excellence of her record. He became aware of it. So, what does that mean? Well, that's the question. It means nothing because it continued, and there is no way to stop it. Now, what does it mean to say, I became aware of it? Does it mean he saw something, he inferred it, or he was told? Your Honor, I think he looked at the results. So, he inferred that from the results? Yes, Your Honor. Let me give you an example. Okay. If you have five members on board and everybody votes 100, or four of them vote 100, and one votes zero, the motion is 400. So, it's obviously something is wrong. And he called attention, he said he called attention to it. He said this is a problem in the Navy, and he was going to the Navy Chief of Personnel. Washburn said she'd been on four, at least six boards. So, this is not a simple, isolated, one-off incident. This allows denominational preferences. When you go to the 97 and 98 board, again, there's evidence there that clearly, hold it, hold it, he said he could influence junior chaplains, and then he admitted advocating for one of his own denomination based on a devotional he heard this guy give. If that's a religious reason, A, it's not on the record, and B, there's no requirement to give a devotional on the grade of commander. You have other evidence in that where Chaplain Madden went up and says he had to go up above the board, he had to go above the zone to get two Catholics because nobody was else there. And the investigator for the Navy looked at those records and said, there's something wrong here, because these Catholics have terrible records, and hold to be admitted that a chaplain with a perfect record was not selected because of, quote, the needs of the Navy. Now, there's no need in the precepts to say we need Catholics priests. I think you're telling us about something that we decided already some years ago. Your Honor, I'm not sure I understand. The law of the case. And in this case, you have to have a chaplain on the board. The statute requires that. And so the idea that somehow you can put off your denominational hat, so to speak, is absurd because the minute you take it off, the board is invalid. It's improperly composed. There must be a denominational representative on there. That's why definition of what is a chaplain is a denominational representative commissioned. And you have to answer the question, well, if you don't allow this chaplain to exercise the sovereign's power in any other issue, in any other aspect, why do you allow him this, which the evidence shows destroys a chaplain's career? That's the exercise of power for a denominational preference. And the courts, Your Honor, must have the ability to examine. Grumman requires, says the courts must examine the process that arrives at a decision to ensure that the fundamental precept of the establishment clause, to make sure that one denomination is not preferred over another, is the rule of law. And all the investigations show that is not the case. Thank you very much, Mr. Schultz. Could I ask you a question about standing for associated gospel churches? Yes, Your Honor. If we were to affirm the district court on the substance, would that require us to still reach the standing issues for AGC? Are there additional claims that AGC has that need to be considered on remand? And if you could just help me understand what those claims would be. Your Honor, the AGC complained that the processes excluded its chaplains. If you look at exhibit number 472, it's a table. And this shows that this is based on the number of applicants that were rejected versus the number of applicants that were considered. And what you see on there is those conservative churches like AGC are below 66%. And if you assume, because we're talking about people who meet all the qualifications, they've passed the minimum bar. And so if you assume if there's domination doesn't play an effect or have an effect, then the acceptance and rejection rates would be about the same. They're not. And so we're trying to say, why is that? And we believe, and there's evidence there, that one of his chaplains, who was later actually hired by the army, now rejected by them, he was asked, well, do you pray in Jesus' name? Can you do that? Well, of course you can do that. Faith requires that. And so the answer is yes. What you're trying to do is make sure that chaplains don't influence the decision based on theological purposes. But are those claims for AGC different from the claims for the other parties? What are their unique claims that would require us to consider their claims separately? Or are there any distinct claims? You know, the distinct claims deal with the accession process primarily, but also they asked to be the representative of their chaplains. They have at this time, there are at least two chaplains in the Adair case. There are three or four in the Larson case in which they joined. And so, yes, they want to represent their chaplains. And the district court said, no, you can't even be a representative. If I can just follow up on Judge Rouse's question. So you said that the accession claims are different. And just to be clear, even if we were to agree with you hypothetically that AGC has demonstrated standing, there'd be no reason to reach that conclusion if the merits of their claims are already resolved by the claims brought by other people as to whom the district court did find that there was standing. And so there'd have to be a reason to find that AGC has standing. And it sounds like what you're saying is there is a reason to find that they have standing because there's a category of claims, the accession claims, that haven't been resolved yet on the merits. That's what we're looking for. Are there claims by AGC that have not yet been resolved on the merits? Because if all their claims have already been resolved on the merits, then it doesn't matter that they have standing. Your Honor, the answer is yes, there are claims. And that has to do with the process by which you're assessed. I see that I'm past my time. Can I continue to ask your question? Yeah, you can ask. Well, what AGC wants to do is make sure that the process guarantees equal opportunity based on secular objective reasons why for a chaplain to be commissioned. We're not asking any of these things. We're not asking for some new special. We're asking for the same process. None of the other services have these issues. And so the issue is, why is this Navy different? And the issue is because they allow chaplains, denomination representatives, to make choices and decisions that affect the other careers. And this is under the Establishment Clause, unless you're trying to, unless you want to ignore grommet, we've argued that grommet controls. But we've decided earlier it doesn't. Let me just follow up more specifically, Mr. Schultz. You said that basically AGC wants secular objective criteria, correct? Yes, Your Honor. But that was also true of CFGC, wasn't it? It was litigated. CFGC was not litigated, Your Honor. Pardon me. Was the question of having secular objective criteria litigated? No, Your Honor. It's not been litigated. Well, then how did the court, it seemed to me that was exactly what the claim was that the court rejected what it said about the constitutionality of the existing regime. Your Honor, it said that the criteria was in the Secretary of the Navy's instructions. If you read those instructions, they don't talk about secular. They talk about subjective things like leadership. Your Honor, we're dealing with ministry, and that's our main point. They're evaluating a subject, but ministry is a religious thing. We're also dealing with leadership, so you don't think leadership can be a valid criterion then? Yes, Your Honor. But your perspective, let me give you an example. Jack Holderby looked at a chaplain from his denomination and said, gee, he gave this devotional. I'm really touched. He belongs, he should be a commander. Now, that's a religious person. There's nothing secular about it. And this court cannot look at these decisions and say, gee, this is based on a secular reason. You can't do that. And what we're saying is its evidence shows that there are guarantees which are required under Gromit, and your ability to review them cannot be. And I will say, Your Honor, if the issue of fusion was not addressed by the court, you won't find that term addressed. They said, well, the issue is there's a standard, and those standards, the term that Larkin used is effective guarantees. And I would suggest that there's a great deal of difference, a constitutional difference between effective guarantees, which the evidence shows there are none. In 2012, we said Gromit and Larkin don't govern here. Yes, Your Honor. So let's not rehash it. It's the law of the case. Yes, Your Honor. But you're required, I believe, to look at what the facts show. And I'm saying fusion does. Are you saying it's not the law of the case? Come on. What is it you're saying? Your Honor, what I remember of that previous decision was they said Larkin provides a standard. It says this is not a standard, this case, as in Larkin. There you go. Yes, Your Honor, but Gromit says they did not delegate, they did not address the fusion results from the commissioning of a clergy person with the power, as is demonstrated by this document, this zeroing out. They didn't examine, they did not examine zeroing out. They didn't even, you won't find in there any reference to Black's testimony or any of the other evidence that showed the denomination played a role. And that is the question. Effective guarantees, effective guarantees. We will not find it where? In the 2018 opinion? No, in the 2013 opinion, you won't find any reference to zeroing out. You won't find any reference to Admiral Black's testimony, Washburn's testimony, none of the testimony that shows that denomination played a part. So if there's an effective standard, how can denomination play a part? It does. The evidence before this court is that there are no effective guarantees. That's the standard by Gromit. That's the standard by Larkin v. Grendelstan. Okay, Mr. Schultz, I just want to make sure my colleagues don't have additional questions for you before we let Ms. Sonny have her time, and then we'll give you a rebuttal time. Okay, thank you, Mr. Schultz. Ms. Sonny? Thank you, Your Honor, and may it please the court, Sushma Sonny for the Secretary of the Navy and the other federal defendants. I'd like to start directly with the standing questions that were posed to my opposing counsel. When your honors asked if there were claims that AGC had, that if they were found to have standing, that they could assert that were not already decided, the answer is no. They were asserting the same systemic claims that the other plaintiffs asserted. They were part of the original Gibson class, which filed suit in 2006. There were, at the beginning, some issues about accession. Those kind of dropped out during the course of this lengthy, lengthy litigation. My understanding is that the, I don't want to put words in the plaintiff's mouth, but my understanding was that the claim was that accessions were allegedly, took place according to, that the Navy followed an illegal quota system. That was the allegation. But even if that allegation were true, and we maintain that it is not, there is no question that since the early 2000s, the Navy Chaplain Corps has accessed chaplains into the Chaplain Corps purely on the basis of merit qualifications without regard to religious affiliation, and there are no quotas. And there are not even any accession goals at this point, as far as I understand. But that sounds like, that sounds like that's your merits response, which may, it may well be persuasive and, but it sounds like what you're saying is, if we had to go to the merits on the accession claims, here would be our response and it's, and it's foolproof. And as I understand what happened, and correct me if I'm wrong, there's a long history here and there may well have been things in the record that we're not completely processing, but as I understand what happens, there were accession claims made at the outset by AGC, and I think by individuals, but at least by AGC, and then those claims were dismissed based on a lack of standing. And then they never saw the light of day in terms of resolution of the merits. And if that's true, and if, again, just hypothetically, if we were to conclude that the determination that AGC lacked standing was erroneous, then there would be some claims that AGC had that have not yet been resolved on the merits. Well, Your Honor, the response is that the, this alleged policy ended before AGC filed suit. And they are only asking for a change in the Navy's practices. So you can't get standing based on practices that weren't in effect when you filed suit. There's, that is why the district court, when it was looking at whether AGC's core mission was at loggerheads with what Navy's policy was toward accessing individuals into the Chaplain Corps. But weren't there, there were no accession claims that went past 2000? No, Your Honor, they were talking about an alleged policy of this, this alleged quota system. And there really, there is no dispute that since the early 2000s, the Navy has followed this accession policy without regard to religious affiliation. In fact, even the process is somewhat different from the promotion and selection, selection board process that the applications go to something called the Care Advisory Board. It's a different process. Can I ask you this question? It's more of a practical question along these lines. If we were to conclude, again, just if, I know you resist the premise, but if we were to conclude that AGC did have standing, would you be opposed to allowing the district court to sort out what exactly went on with the claims in terms of whether there's claims that were raised at the outset that survived because they were never resolved on the merits? Because it seems like at least there's some confusion as to what exactly was raised by whom and when and what exactly was resolved in which opinion. Would that be something that the government would oppose? Your Honor, we would urge this court to decide this case while it is on appeal. It has gone on for over 20 years. And when Your Honor references claims made at the outset, there have been four different district court judges that have considered this case. I completely understand that this case has gone on for a long time and it's gone through many judges. That's absolutely true. But there's also a statute of limitations issue and everybody agrees now that the statute of limits was applied incorrectly. And then there's an equitable tolling question. And yes, it's in theory, the court of appeals could resolve that equitable tolling question. It's also quite commensurate with what courts of appeals normally do in those situations to remand to allow that to be sorted out in the district court. And if that were going to happen, then it's going back. Regrettably, I understand your perspective on this, but in any event for resolution of that. Your Honor, I would again that is another point that I wanted to be sure to emphasize. We would urge this court to decide the question of equitable tolling in the first instance, because and it is appropriate for the court. This is one of those situations where it is appropriate, entirely appropriate for the court to decide that question in its discretion. Because the case has gone on for more than 20 years and we are talking about the particular claims that the plaintiffs want to revive are not simply stale. They date back to the 70s and 80s so that when the first of these cases was filed in 1999 those claims were already two decades old and now would be over four decades old. So rather than prolong this, we would ask this court to decide the question of equitable tolling. It's also appropriate because one of the things that this court looks at is whether It would be fair to the parties and the parties absolutely fair to the parties, the parties thoroughly brief the question of equitable tolling and fraudulent concealment in the district court at least twice. The also it's appropriate to decide that question. If the answer is clear and the answer on equitable tolling based on fraudulent concealment is clear. Do you think it would be inappropriate for us to remand. Is that the government's take Your Honor, it is a question of this court's discretion. So it is not inappropriate, but we would simply urge this court to bring these proceedings to a close. The AGC's standing. Pardon me, their claim for standing is based in part on the following quotation from their compliant AGC receives financial support from its chaplains. Rejection results in a loss of AGC resources, etc. Is there a is there a money claim for the for the lost Jews, as it were. Not that I'm aware, Your Honor. My understanding is that this is a suit for declaratory and injunctive relief. I mean, setting aside the individuals claims. It is a suit for declaratory injunctive relief to change agency practices. So, and the things that we would have to resolve would include I think you said Fraudulent concealment. Right. Yes. I think also willfulness. If I'm mistaken, if I'm not mistaken. I'm not sure there were three or so elements. I think that would have to be Resolved, all of which are based on factual in nature. Correct. Well, the fraudulent my understanding, Your Honor, would be that the fraudulent concealment question would be the one to decide. I don't, I have not understood it to be a question of willfulness. I mean, here we look at what the plaintiffs have alleged You're right. It's a question of Whether the Navy engaged in a course of conduct designed to conceal Designed to Rather than willfulness. Okay. So we look at And then the question of actually constructive notice. On which I'm trying to say I think you're showing was rather weak and and and of due diligence. So all those things we would have to resolve from from up here at 30,000 feet. Your Honor, in terms of fraudulence fraudulent concealment. It is a difficult standard. It's meant to be a difficult standard. And it's not enough. Simply for the for the defendant to have set back they there has to be some trick or contrivance and what the plaintiffs Better was not reason. Let's see, this was resolved on the ground that equitable tolling was not possible. Correct. Yes, Your Honor. Not on the ground that it was not warranted That's correct. And so would it not be open to the plaintiffs to induce facts with regard to Intent and Diligence and so on. Your Honor, they had seven years to do that. If it's not in the record. Now there's nothing additional to come out. District Court could not could not accept more evidence on that. Didn't reach it. I'm wondering about that. Your Honor, there is no need for the court to reopen discovery. In this case, it went on for seven years off and on 9000 pages of documents. 20 odd depositions taken by the plaintiffs. If they don't have evidence of fraudulent concealment. Now they are not going to be able to get it. And let's look at what they say constituted fraudulent concealment by the government. They say that is The hierarchical nature of the military. The fact that selection board proceedings can't be disclosed. The fact that personnel files of other Other people up for promotion are protected by Privacy Act. Also, there's an allegation that Unspecified members of the chaplain core leadership told plaintiffs that the proceedings were merit based and not discriminatory. And none of that rises to level fraudulent concealment. It is simply not fraud for the Navy and the chaplain core to follow federal law. There has to be something more than this. Secretary's refusal to waive secrecy. Your Honor. 613 a is an absolute statutory privilege. The Secretary can waive it in certain circumstances like as it does, as he does. For instance, when there are IG investigations, but not For civil discovery. In fact, it's a pretty clear prohibition against that kind of the fishing expedition that civil discovery turns into Or was the civil discovery aspect of this also Prohibition not within the power of the Secretary to waive There is, would it be within the power of the Secretary, the Secretary can waive it, but Okay, does not waive it for civil. I mean, Congress made it clear they don't want these proceedings to be coming out and civil discovery. Except when the Secretary thinks there's good reason There's a good reason to make sure that people can have a frank exchange of their viewpoints when they meet to discuss promotion of people in the military, which the chaplains are It was also just to close the loop on This question about About the knowledge constructive knowledge and about the fraudulent the fraudulent concealment in general, the notion that The chaplain corps was able to conceal this evidence of wrongdoing is implausible in light of the fact, which is in the record. That the individual, individual plaintiffs when they were up for promotion, the information of who else was up for promotion. Who was on the selection board who was chosen was all not what that was all known that was publicly available information. It was disclosed around the time of the selection proceedings and obviously the plaintiffs themselves knew if they were not selected. At the same time, it's, it's a fairly small community. The chaplain corps at its peak. It was less than 900 people people serve together. They know what other people's reputations are they know if there is a chaplain who is spoken of very highly by his peers. If there's a chaplain who's superior officer talks him up. And they talk to each other. And that's what the consolidated complaint makes clear the notion that under those circumstances, the Navy could have concealed This evidence of wrongdoing. It just isn't plausible and the court doesn't need to remand to the district court. To see that I want to make sure that I address any questions the court might have about finality because the court did ask us to address that and often that reflects a concern by a court that there was some type of Arrangement or agreement between the parties to create appellate jurisdiction. I want to assure the panel that that was not the case here. I see I'm almost out of time and we did thoroughly brief the issues in this case. I want to make sure that I don't leave leave you with any questions. I mean, it is very easy to get confused. In this case, for instance, my opposing counsel referred to Standards for accession. That included some some particular standards like leadership that are not relevant to accession, but are in fact part of the promotion process. So there are many things like that, that it's very easy to get confused and I want to make sure that if there are any questions that I can address them. And I don't think so. Let me double check with my colleagues. I think, I think we understand your arguments. Thank you, Miss Sony Thank you, your honor. We asked you to the panel to affirm. Thanks, Mr. Schultz. We'll give you your rebuttal time. Thank you, Your Honor. First off, a declaration of Chaplain Brown endorsing the Associated Gospel Church is a matter of record. It's in this And he identifies specific chaplain applicants that were rejected by the Navy, despite a shortage of chaplains. And there was no excuse. They've met all of those things and no reason was given. And so the issue of the fact that these are years and there's nothing here that's that's that's current is not is incorrect. Secondly, there is asking for a junction. These processes are created administratively. And so what's administratively correct today may be changed tomorrow. And, and, and then we go back to the way it was. We're looking for protections to make sure that denomination doesn't become a issue. Effective guarantees is the term which we can't just say effective guarantees, not some subjective standard effective guarantees and The issue of tolling, the question was, why did we not know? The only record that shows that supposedly my chaplains were aware of this was an article in the Army Lawyer and a supposedly some some other discussion and a local article in the San Diego paper. Are you still seeking a remand on the tolling issue because it seems in your reply brief that you're suggesting we could or it would be appropriate or or fine for us to decide that issue in the first instance, are you still maintaining that you think a remand is Are you still seeking a remand on the tolling issue. Your Honor, my position or our position was that you have discretion, but the burden that the defendant has to show is that That when you get to self concealing this has to be widely known. I don't want to go through all of the things and that's just not here. They can't show They have not presented evidence of any senior chaplain, anybody there at the time that said, oh yes, I remember Wilkins. I remember Wilkins, we had training on that. It's not there. And if that had been widely known There'd be all kinds of people that they could come and say, hey, here it is, which they were aware. There's nothing here. And so the idea that somehow they perceive this just because of the fact that your promotion is. Let me emphasize the fact that You don't know what the other person's record and the very fact that as Tony pointed out, the reputation, the record shows that reputation, which is not in the record is considered. And so how is that Reputation for what if you're a liturgical you like people that are liturgical if you're a non liturgical you prefer people. And so that very argument that they were discussing this goes against allowing that. Furthermore, thank you. These are secret proceedings. Let me just make sure my colleagues don't have additional questions for you since we're through your rebuttal time Thank you. Thank you, Mr. Schultz. Thanks for your argument, counsel. Thank you to both counsel will take this case under submission and the court will stand in a short recess before we take up the third case.
judges: Srinivasan, Rao, Ginsburg